IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FRANK J. WILKINS, SR.,

        Plaintiff,

v.                                     Civil Action No. 3:20-cv-842

DAT TRAN, ACTING SECRETARY,
U.S. DEPARTMENT OF VETERANS AFFAIRS,

        Defendant.

## OPINION

Frank J. Wilkins, a Black, Jewish man, worked as a Reproduction Specialist at McGuire Medical Center in Richmond, Virginia, from 1991 to 2019. He asserts that he suffered disparate treatment throughout his employment due to his race and religion. Specifically, he alleges that his supervisor declined to perform a desk audit of his position and failed to forward an updated position description to Human Resources. Consequently, Wilkins's position remained classified as GS-4 instead of GS-5 or GS-6, and his wages remained commensurate with that classification.

Wilkins sues Dat Tran, the Acting Secretary of the U.S. Department of Veteran Affairs, under Title VII of the Civil Rights Act of 1964 for race-based (Count One) and religion-based (Count Two) discrimination.[1] Tran moves to dismiss Wilkins's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Wilkins adequately pleads his Title VII claims, the Court will deny Tran's motion.

---

[1] The amended complaint named Robert L. Wilkie, then Secretary of the U.S. Department of Veteran Affairs, as the defendant. Federal Rule of Civil Procedure 25(d) automatically substitutes Dat Tran, Mr. Wilkie's successor, as the defendant.

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT

Wilkins worked for the Department of Veterans Affairs ("VA") from 1991 until he retired in July 2019. Wilkins alleges that "[t]hroughout [his] tenure at the" VA, he experienced "harassing and discriminating behavior." (ECF No. 6, at 3.) In 1999, Wilkins "felt that his working conditions were . . . intolerable" due to age-, race-, sex-, and religion-based discrimination. (*Id.* at 4.) "The issues that [Wilkins] experienced . . . included, but were not limited to," his then supervisor's "failure to address abusive language targeted at [Wilkins] and . . . provide basic work necessities such as a beeper and voicemail access." (*Id.*) In 2000, Wilkins filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") for race-, sex-, and religion-based discrimination, which led to a settlement agreement between the VA and Wilkins. Pursuant to the settlement agreement, Wilkins and the VA agreed that he would only report to Kevin Buser. Buser, Wilkins's direct supervisor "since approximately 2000," knew about Wilkins's 2000 EEOC complaint. (*Id.*) In addition, Jennifer Marshall, Wilkins's union representative, provided Buser with copies of the settlement agreement.

Buser repeatedly defied the settlement agreement by "tr[ying] to have others supervise" Wilkins. (*Id.*) Buser, a "white 'nondenominational' male," also "reprimanded [Wilkins] for relatively benign incidents" while not reprimanding other non-Jewish, non-Black employees for similar incidents. (*Id.*) Wilkins does not describe these incidents, but they happened "[o]n multiple occasions." (*Id.*) Wilkins's coworkers also "often denigrated [his] religion and referred to him as 'the guy that wears the yarmulke,' or words to that effect." (*Id.*) Wilkins notified Buser of these remarks, but "Buser appeared disinterested, did not take it seriously, and took no action." (*Id.*)

"For many years," Wilkins tried to have his position reclassified from GS-4 to GS-5 or GS-6, because "similarly situated Reproduction Specialist[s] . . . were classified as GS-6's." (*Id.* at 5.)

2

In June 2009, Marshall began asking Buser to compensate Wilkins "commensurate with a GS-5 or GS-6 level" because his Reproduction Specialist "duties[,] . . . workload[,] and responsibilities" had grown "more than 25%" since the VA last updated his position description in 1978. (*Id.*) Indeed, Wilkins "was responsible for . . . performing . . . GS-6 grade level duties at the McGuire Medical Center in Richmond, [and] providing services" at VA facilities in Richmond, Charlottesville, Emporia, and Fredericksburg. (*Id.* at 7). Moreover, "due to the expansion of the hospital facilities, the increase in its medical, staff[,] and patient population, and . . . expanded locations of work," Wilkins "was the only employee in his office." (*Id.* at 5.)

On February 23, 2017, Marshall sent Buser a letter explaining that Wilkins's position description no longer reflected his job duties and formally requesting that he conduct a desk audit of Wilkins's position. (*See* ECF No. 1-4.)[2] "At Buser's direction, and/or that of the" VA, the desk audit never occurred. (ECF No. 6, at 6.) "Buser had previously approved Desk Audits for Caucasian non-Jewish warehouse workers at the Richmond VA[] and Desk Audits for other position descriptions under Buser's control," including two desk audits for white, non-Jewish females and one for a white, non-Jewish male. (*Id.*) Moreover, Buser resisted performing a desk audit for an "African American non-Jewish female," performing the desk audit only after someone filed a grievance on her behalf. (*Id.*)

On March 30, 2018, Wilkins drafted an updated position description; Marshall forwarded it to Buser and the VA. The updated position description states that Wilkins's "[d]aily work

---

[2] "While considering a 12(b)(6) motion, [courts] may consider documents attached to the complaint or the motion to dismiss so long as they are integral to the complaint and authentic." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018) (cleaned up) (quoting *Kensington Volunteer Fire Dep't, Inc. v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012)). Although Wilkins did not reattach the exhibits from his original complaint to his amended complaint, the Court may consider them because "they are integral to the [amended] complaint and authentic." *Id.*

assignments are made in written form by the service chief/approval individual," but his "[w]ork is performed independently according to predetermined priorities and production requirements." (ECF No. 1-5, at 2.)[3]  Buser told Wilkins "that the duties listed in the update[d] position description were accurate."  (ECF No. 6, at 6.)  Wilkins then asked Buser to submit the updated position description "to the centralized classification unit for grade determination." (*Id.* at 7.)  Although Buser told Wilkins that he had submitted the updated description to a Human Resources employee, that employee "stated she never received a classification package for [Wilkins] from Mr. Buser." (*Id.*)  Wilkins remained classified as GS-4.

On August 3, 2018, Wilkins filed a complaint with the EEOC.[4]  On August 4, 2020, the VA issued its Final Agency Decision, giving Wilkins ninety days upon receipt to file a lawsuit. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a).  Wilkins filed his original complaint on November 3, 2020.[5]

---

[3] Wilkins had received positive performance reviews from Buser in 2016 and 2017.  (*Id.* at 7-8; *see also* ECF No. 1-6.)  Both performance reviews state that Wilkins "has independently and successfully managed a complex Duplicating and Reproduction department."  (ECF No. 1-6.) Working independently relates to "[f]actor number two" of the "Factor Evaluation System" for distinguishing GS-4 and GS-6 positions.  (ECF No. 6, at 7.)  "Factor number two . . . is the only factor, out of nine, that provides for a different point apportionment between GS-4 and GS-6." (*Id.*)  GS-6 employees "work independently." (*Id.*)  GS-4 employees "operate[] under the direct supervision of the Chief, Material Management Service." (*Id.*)

[4] Wilkins's amended complaint does not specify the type of discrimination alleged in his 2018 EEOC complaint, nor does it include a copy of the EEOC complaint as an exhibit.  Because the Court must draw all reasonable inferences in Wilkins's favor at this stage of litigation, *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009), it infers from Wilkins's amended complaint and the defendant's failure to argue that Title VII's administrative exhaustion requirement procedurally bars Wilkins's claims, *see, e.g., Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 570 (E.D. Va. 2009), that the 2018 EEOC complaint alleged both race- and religion-based discrimination.

[5] Although ninety-one days elapsed between August 4, 2020, and November 3, 2020, the Court reasonably infers that Wilkins timely filed his complaint.  "When the date that a potential plaintiff received actual notice of [his] right to sue is disputed or unknown, Fed. R. Civ. P. 6(e)

## II. **DISCUSSION**[6]

"Title VII of the Civil Rights Act of 1964 . . . prohibits employment discrimination on the

basis of race, color, religion, sex, or national origin." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).

Specifically, "Title VII prohibits both intentional discrimination (known as 'disparate treatment')

as well as . . . practices that are not intended to discriminate but in fact have a disproportionately

adverse effect on minorities (known as 'disparate impact')." *Id.* A plaintiff alleging employment

discrimination under Title VII can state a claim by alleging: (1) "'direct or circumstantial evidence'

that discrimination motivated the employer's employment decision"[7] or (2) facts sufficient to

---

creates the presumption that notice was received three days after it was mailed." *Panyanouvong v. Vienna Wolftrap Hotel*, 525 F. Supp. 2d 793, 796 (E.D. Va. 2007). Because the VA could not have mailed notice before August 4, 2020, Wilkins's earliest presumed receipt occurred on August 7, 2020, eighty-eight days before November 3, 2020.

[6] In considering Rule 12(b)(6) motions, a court must accept all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nemet Chevrolet*, 591 F.3d at 253. Pleadings consisting of "no more than conclusions," however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a facially plausible claim to relief. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.
    The same principles apply in Title VII cases. *See Swierkiewicz v. Sorema, N. A.*, 534 U.S. 506, 511 (2002). Although *Iqbal* and *Twombly* "alter[ed] the criteria for the sufficiency of a complaint," they "did not overrule *Swierkiewicz's* holding that a plaintiff need not plead the *evidentiary* standard for proving a Title VII claim" to survive a Rule 12(b)(6) motion to dismiss in an employment discrimination case. *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586-87 (4th Cir. 2015). Thus, the plaintiff must "allege[] facts that plausibly state a violation of Title VII 'above a speculative level.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)).

[7] Under this first method, courts often group direct and circumstantial evidence of discrimination and analyze them as "direct" evidence. *See, e.g., Bing*, 959 F.3d at 616 n.8; *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 817 (E.D. Va. 2016). Moreover, "[c]ourts routinely consider indirect evidence to be tantamount to circumstantial evidence." *Hinton*, 185 F. Supp. 3d at 817 (quoting *Lee v. Wade*, No. 3:15CV37, 2015 WL 5147067, at *3 (E.D. Va. Aug. 31, 2015)). As such, "direct" evidence counterintuitively includes its polar opposite: indirect evidence.
    Although the Fourth Circuit previous analyzed claims relying on circumstantial evidence separately from claims relying on direct evidence of intentional discrimination, *see Moore v. City*

plausibly establish a prima facie claim under the *McDonell Douglas* framework. *Bing*, 959 F.3d at 616 n.8.

A plaintiff relying on the first method, as Wilkins seems to do here, must plausibly allege "(1) direct or indirect evidence of intentional discrimination (2) against plaintiff for belonging to a protected class, which motived (3) an adverse employment action." *Hinton*, 185 F. Supp. 3d at 817. "Direct discrimination may include . . . statements by an employee's supervisors that are generally discriminatory or statements by supervisors that indicate that their actions were motivated by the employee's" membership in a protected class, *id.* (quoting *Lee*, 2015 WL 5147067, at *3), or "evidence of a general pattern of [unlawful] discrimination in the practices of a defendant," *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017). Ultimately, the Court looks to the "totality of the circumstances" alleged in the complaint. *Whitehurst v. Bedford Cnty. Sch. Bd.*, 6:19cv10, 2020 WL 3643132, at *7 (W.D. Va. July 6, 2020).

### A. Count One: Unlawful Racial Discrimination

In Count One, Wilkins asserts a racial discrimination claim based on Buser's failure to (1) perform a requested desk audit and (2) submit Wilkins's updated position description for reclassification.

Wilkins pleads sufficient facts to survive Tran's motion to dismiss Count One. First, as a racial minority, Wilkins belongs to a protected class. Next, because Buser's failure to perform a desk audit or submit Wilkins's updated position for regrading plausibly affected Wilkins's compensation, Wilkins alleges an adverse employment action. *See Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999) (noting that a "decrease in compensation . . . or opportunity for promotion"

---

*of Charlotte*, 754 F.2d 1100, 1105 (4th Cir. 1985), that analytical framework appears to have fallen out of favor, *Bing*, 959 F.3d at 616 n.8.

constitutes an adverse employment action). Stated differently, Wilkins alleges that, but for Buser's actions, he would have become a GS-6 and earned higher wages.

Finally, viewing these actions in the context of Buser's noncompliance with the settlement agreement from Wilkins's 2000 EEOC complaint and Wilkins's allegations that Buser treated him less favorably than the white employees he supervised, Wilkins plausibly alleges that racial animus, at least in part, motivated Buser's actions. *See Whitehurst*, 2020 WL 3643132, at *7 (analyzing the plaintiff's Title VII claim "in the context of [her] other factual allegations relating [her employer's] more favorable treatment of [her] male senior staff counterparts"). Notably, Wilkins also alleges that Buser resisted performing a desk audit requested by another Black employee Buser supervised, which hints at a pattern of unlawful discrimination.[8] Accordingly, the Court will deny Tran's motion to dismiss Count One.

### B. Count Two: Unlawful Religious Discrimination

In Count Two, Wilkins asserts a religious discrimination claim under Title VII arising from the same events underlying Count One.

Wilkins's Judaism makes him a member of a protected class. For the reasons discussed in Section III.A, Wilkins has adequately pled an adverse employment action. Lastly, Wilkins pleads enough facts for the Court to reasonably infer that religious animus, at least in part, motivated Buser's failure to perform a desk audit and forward Wilkins's updated position description. Again, the Court analyzes Buser's actions in the context of Wilkins's other allegations, which demonstrate Buser's indifference to the religious discrimination that Wilkins endured before 2000 and

---

[8] Although Wilkins does not allege that these coworkers qualify as similarly situated comparators, he is not required to do so to prevail on his Title VII claim, let alone to survive a motion to dismiss. *See Bing*, 959 F.3d at 616 n.8.; *Whitehurst*, 2020 WL 3643132, at *7 (quoting *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 720 (4th Cir. 2013)).

continued to experience in the form of denigrating comments from coworkers.  Combined with Wilkins's allegations that Buser treated non-Jewish employees more favorably than him by reprimanding them less and granting them desk audits, the Court infers that Buser's indifference may have amounted to religious discrimination.  The Court will, therefore, deny Tran's motion to dismiss Count Two.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny Tran's motion to dismiss.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: __1 June__   2021

Richmond, VA

/s/
_____
John A. Gibney, Jr.
United States District Judge

8